# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CASE NO. 1:13-CV-96-GCM

|  |  |  |
|---|---|---|
| **CHARLES BROWN,** | ) ) ) |  |
| **Plaintiff,** | ) ) |  |
| vs. | ) ) |  |
| **CAROLYN W. COLVIN,** | ) ) | **ORDER** |
| **Acting Commissioner of Social Security,** | ) ) |  |
| **Defendant.** | ) ) ) |  |

     **THIS MATTER** comes now before the Court upon Plaintiff Charles Brown's ("Plaintiff's") Motion for Judgment on the Pleadings, (Doc. No. 9) filed on September 24, 2013, Defendant Acting Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment, (Doc. No. 11), filed on November 19, 2013, and Plaintiff's Response in Opposition (Doc. No. 13), filed on December 3, 2013. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits.

     Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Social Security Appeal is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Administrative Law Judge's ("ALJ's") decision is **AFFIRMED**.

## I.       PROCEDURAL HISTORY

     Plaintiff filed an application for a period of disability and disability insurance benefits on October 28, 2009, alleging a disability onset date of June 12, 2009. (Tr. at 16). Plaintiff's application was initially denied on February 23, 2010, and again upon reconsideration on

December 10, 2010. (*Id.*). Plaintiff requested a hearing before an ALJ on January 7, 2011, and a hearing was held before the Honorable John McFadyen on August 18, 2011. (*Id.*) On October 18, 2011, the ALJ issued a decision denying Plaintiff benefits. (Tr. at 16–29). The Appeals Council denied Plaintiff's Request for Review by Action, thus the October 18, 2011 ALJ decision became the Commissioner's final decision. (Tr. at 1–3).

Plaintiff timely filed this action on April 3, 2013, and the parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, this Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

This Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citations omitted). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, the Fourth Circuit defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986). It is "more than a scintilla and must do more than create a suspicion of the existence of a fact to be established." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

# III.    DISCUSSION[1]

The question before the ALJ was whether Plaintiff was "disabled," as defined for Social Security purposes, between June 12, 2009, and the date of his decision.[2] (Tr. at 16). On October 18, 2011, the ALJ found that Plaintiff was not "disabled" between June 12, 2009 and the date of his decision. (Tr. at 29). The Social Security Administration has established a five-step sequential evaluation process for determining if a claimant is disabled:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i–v).

In this case, the ALJ determined that Plaintiff was not disabled under the fifth step in the above evaluation process. (Tr. at 28). Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity after his alleged disability onset date. (Tr. at 18). At the second step, the ALJ found that Plaintiff suffered from two severe, but non-disabling

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

[2] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

impairments: (1) coronary artery disease with a history of sextuple bypass graft surgery, with occlusion of five of the bypass grafts and trans-myocardial revascularization, and subsequent EECP treatments to reduce angina; and (2) episodic low back pain with mild degenerative changes. (Tr. at 19). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, App. 1. (Tr. at 20). At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. at 23). After assessing Plaintiff's RFC, the ALJ found that Plaintiff retained the capacity to "perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(2) and 416.967(a)." (Tr. at 20).[3] At the fifth step, considering Plaintiff's medically determinable impairments, functional limitations, age, education, and work experience, the Medical Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, and the adjudicatory guidance of Social Security Regulations ("SSRs") 83-12, 83-14, and 85-15, the ALJ found that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform. (Tr. at 28). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between June 12, 2009 and October 18, 2011, the date of the decision. (Tr. at 21).

On appeal, Plaintiff makes the following assignments of error: (1) the ALJ improperly evaluated the medical opinion evidence in violation of C.F.R. § 404.1527; (2) the ALJ erred in finding that Plaintiff did not meet Disability Listing 4.04C; and (3) the ALJ's credibility analysis violated 20 C.F.R. § 404.1529. (Pl. Mem. at 1).

---

[3] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. C.F.R. § 416.967(a).

**1.      The ALJ Properly Weighed the Medical Opinion Evidence**

Plaintiff alleges that the ALJ improperly evaluated the medical opinions of his treating, examining, and non-examining physicians. (Pl. Mem. at 15.) The ALJ must evaluate the opinion of a treating physician to determine whether that opinion is entitled to controlling weight under the regulations. *See Mastro*, 270 F.3d at 178.  In order for a physician's opinion to be given controlling weight: (1) the opinion must be from a treating source; (2) the opinion must be a medical opinion concerning the nature and severity of the plaintiff's impairment; (3) the opinion must be well-supported by medically acceptable "clinical and laboratory diagnostic techniques"; and (4) the opinion must be consistent with other "substantive evidence" in the administrative record. SSR 96-2p, *available at* 1996 WL 374188, at *2.  Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Additionally, an ALJ may discount a treating physician's opinion that is based entirely on the plaintiff's own subjective reports. *See Johnson*, 434 F.3d at 658; *see also Mastro*, 270 F.3d at 178.

However, if the opinion is not entitled to controlling weight, or is from an examining physician, the ALJ must consider the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. §

404.1527(c)(2)–(6); *see Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

In the present case, the ALJ properly evaluated the medical opinions of Dr. Bailey, Dr. Uhren, Dr. Zeisz, Dr. Fulmer, Dr. Charles, and Dr. Entmacher as required by the regulations and SSR 96-2p. The ALJ found that the opinions were not consistent with the physicians' own treatment notes or other substantial evidence in the record, or were based entirely on Plaintiff's subjective reports, all valid bases for giving an opinion limited weight.

### A. The ALJ did not err in weighing the findings of Dr. Bailey

Plaintiff argues the ALJ should have given controlling weight to the opinion of Dr. Bailey, Plaintiff's treating physician. (Pl. Mem. at 15). However, the ALJ's decision not to award controlling weight Dr. Bailey's opinion was supported by substantial evidence. The ALJ acknowledged that Dr. Bailey was Plaintiff's treating physician, but found that his opinions were internally inconsistent. *See Boyd v. Chater*, 70 F.3d 111, at *1 (4th Cir. 1995) (table) (no controlling weight where doctor's reports were internally contradictory); *see also Craig,* 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes).

Particularly, the ALJ concluded that the functional limitations outlined in Dr. Bailey's questionnaire (Tr. at 626–27) were entitled to little weight because they were "inconsistent with the objective evidence and Dr. Bailey's own treatment records." (Tr. at 26). In support of this finding, the ALJ noted that while the questionnaire, completed July 27, 2011, indicated that Plaintiff suffers from Class IV cardiomyopathy (Tr. at 627), Dr. Bailey's treatment notes, dated April 8, 2011 (Tr. at 581), classify Plaintiff's cardiomyopathy as Class II–III. (Tr. at 25). The ALJ also noted that in the same treatment notes, Dr. Bailey states that Plaintiff reported more energy and angina only when he was busy or tired. (Tr. at 25). Likewise, this report is

inconsistent with Dr. Bailey's questionnaire, which notes that Plaintiff's pain and symptoms can be expected to constantly interfere with his concentration. (Tr. at 627). Because Dr. Bailey's medical opinion in the questionnaire is inconsistent with his own treatment records, the ALJ appropriately accorded his opinion less weight.

### B. The ALJ did not err in weighing the findings of Dr. Uhren

Plaintiff further alleges that the ALJ erred by failing to weigh the opinion of Plaintiff's treating physician, Dr. Uhren. (Pl. Mem. at 16). However, Dr. Uhren did not submit an opinion and Plaintiff does not cite which opinion the ALJ allegedly failed to weigh. Plaintiff seems to be referring to a questionnaire that counsel for Plaintiff sent Dr. Uhren. However, Melissa Fowler, a physician's assistant, completed the questionnaire and crossed out Dr. Uhren's name. (Tr. at 635–36). The ALJ considers and briefly summarizes this questionnaire in his decision, but does not indicate the weight he ascribed it. (Tr. at 24).

The SSRs require that an ALJ weigh each medical opinion in his decision. 20 C.F.R. § 404.1527(c). The Fourth Circuit has held that unless the ALJ explicitly states the weight given to the relevant evidence, the court cannot determine if findings are unsupported by substantial evidence. *Rivera v. Colvin*, No. 5:11-CV-569-FL, 2013 WL 2433515, at *3 (E.D.N.C. June 4, 2013) (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)). "Nevertheless, an ALJ need not discuss each item of evidence in the record, but instead may limit explanation of the weight given to 'obviously probative exhibits.'" *Rivera*, 2013 WL 2433515, at *3 (finding ALJ's failure to weigh medical opinion harmless when the medical opinion was inconsistent with other substantial evidence during the period of alleged disability) (citing *Gordon*, 725 F.2d at 235)).

The contents of Melissa Fowler's questionnaire establish that even if the ALJ had weighed it, the outcome would not have been different. Although the ALJ did not weigh the

opinion of physician's assistant Melissa Fowler, he weighed the opinion of Dr. Bailey, who completed an identical questionnaire. Plaintiff acknowledges that the opinions present the same diagnoses and functional limitations. (Pl. Mem. at 16). Because the opinions set forth the same conclusions, the ALJ's determination that Dr. Bailey's questionnaire is inconsistent with other substantive evidence in the record is equally applicable to the opinion of physician's assistant Melissa Fowler. *Yuengal v. Astrue*, No. 4:10-CV-42-FL, 2010 WL 5589102, at *9 (E.D.N.C. Dec. 17, 2010) (finding that an ALJ's failure to weigh a medical opinion similar to a discounted medical opinion was harmless error).

In addition to its similarity to Dr. Bailey's opinion, Melissa Fowler's opinion is inconsistent with other evidence in the record. For instance, the questionnaire states that from June, 2009 to July 29, 2011, Plaintiff could not sit in an office chair for at least six hours out of an eight hour workday and could not sit in a work-like environment for more than one hour out of an eight hour workday. (Tr. at 638). Yet, treatment notes from Dr. Zeisz's psychological evaluation record that Plaintiff stated "he mostly plays games on Facebook on the computer during the days." (Tr. at 420). Likewise, the ALJ noted that Plaintiff wrote in his Function Report that he spends most of the day on the computer. (Tr. at 21, 199). Further, the questionnaire states Plaintiff is severely limited in his ability to "accept instructions and respond appropriately to criticism from supervisors" (Tr. at 641), yet Plaintiff writes in his Function Report that he follows spoken instructions "pretty good" and gets along "good" with authority figures. (Tr. at 204–05).

Moreover, Plaintiff argues, "[g]iven the importance of properly analyzing a treating physician's opinion, an ALJ's failure to discuss the weight accorded to that opinion requires remand." (Pl. Mem. at 16). Yet, the opinion at issue is not an acceptable medical source, and thus

not a treating source. *See Satterfield v. Astrue*, No. 6:11–cv–00826, 2013 WL 1003659, at *21 (S.D.W.VA. Jan. 30, 2013) (finding that a physician's assistant is not an acceptable medical source under [20 C.F.R. § § 416.913(1), 927(a)] governing regulations)). Instead, a physician's assistant qualifies as an "other source," whose opinion is entitled to "significantly less weight." *See Craig*, 76 F.3d at 586; 20 C.F.R. §§ 404.1513(d)(1); SSR 06.03p ("Only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight."). Therefore, had the ALJ weighed Melissa Fowler's opinion, it would have been entitled to significantly less weight than a treating physician's. For these reasons, the Court finds that the ALJ did not err in his treatment of this opinion.

### C. The ALJ did not err in weighing the findings of Dr. Zeisz

Plaintiff next argues that the ALJ erred by rejecting the opinion of Dr. Zeisz, who examined Plaintiff for a psychological evaluation on February 11, 2010. (Pl. Mem. at 16). Dr. Zeisz found that:

> Physical conditions appear to play a role in [Plaintiff's] disability at this time . . . He has had episodes of severe depression throughout his life and is currently severely depressed . . . At this time he does not appear to have the physical or psychological resources to maintain employment . . . His stress tolerance appears very limited by a combination of physical fatigue from the heart attack and depression.

(Tr. at 422). The ALJ evaluated and weighed Dr. Zeisz's findings and accorded little weight to her opinion, reasoning that: (1) the findings regarding Plaintiff's physical limitations are beyond the scope of a psychological examiner and better addressed by physicians whose expertise involves physical impairments; and (2) the findings regarding Plaintiff's mental limitations are based upon Plaintiff's subjective complaints and are inconsistent with treatment notes. (Tr. at 23–24).

Although Plaintiff disagrees with the manner in which the ALJ weighed the conflicting

evidence in this case, the Court finds that the ALJ's decision to discount Dr. Zeisz's medical opinion regarding Plaintiff's physical limitations is supported by substantial evidence in the record. In determining that the effect of Plaintiff's heart condition upon his ability to work is more accurately assessed by physicians treating Plaintiff for this impairment than a psychologist, the ALJ appropriately exercised his duty to weigh conflicting evidence. *Chater*, 76 F.3d at 589 ("In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary.") (citing *Hays*, 907 F.2d at 1456 (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence)).

Likewise, the ALJ's rejection of Dr. Zeisz's findings about Plaintiff's mental limitations is supported by substantial evidence. In her evaluation, Dr. Zeisz explains that Plaintiff completed depression and anxiety inventories in which he endorsed every listed symptom. (Tr. at 418). The ALJ explained that Dr. Zeisz's findings are "based upon the claimant's subjective complaints when treatments notes show that the claimant showed good response to treatment and his psychiatric symptoms were stable when he takes his medications as prescribed." (Tr. at 24). When conflicting evidence is present and a physician's finding is based largely on the claimant's self-reported symptoms, an ALJ may discount a treating physician's opinion. *See Mastro*, 270 F.3d at 178 ("[T]he ALJ correctly afforded the medical opinion of Dr. Templeman little weight given that he based his opinion on the subjective complaints of [the claimant] without sufficient evidence to substantiate her claims."); *see also Austin*, 2013 WL 1182230, at *3 (finding ALJ's rejection of psychological evaluations was supported by substantial evidence when evaluations were based on claimant's subjective allegations).

**D.  The ALJ did not err in weighing the findings of Dr. Fulmer and Dr. Charles**

Additionally, Plaintiff alleges that the ALJ erred by not considering the opinions of state agency physicians Dr. Fulmer and Dr. Charles. Plaintiff argues this error was significant because these physicians found that Plaintiff "suffered from severe mental impairments which affected his ability to work and the ALJ did not include any mental limitations in his RFC." (Pl. Mem. at 17). The ALJ found that because Plaintiff's "depression and anxiety do not cause more than minimal limitations in [his] ability to perform basic mental work activities," the impairments are "therefore, non-severe."[4] (Tr. at 19).

The ALJ's finding that Plaintiff's anxiety and depression were not severe constitutes a determination that Plaintiff's anxiety and depression were impairments. *Sturdivant v. Astrue*, No. 7:11–CV–53–D, 2012 WL 642541, at *4 (E.D.N.C. Feb. 1, 2012). (citing 20 C.F.R. § 404.1521(a)). When an ALJ determines that a claimant has a mental impairment, he must follow a special technique to evaluate such impairments, as described in 20 C.F.R. § 404.1520a (b)–(e). 20 C.F.R. § 404.1520a (a). Under this technique, "an ALJ is to rate the degree of a claimant's functional limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation," and indicate a finding as to the degree of limitation in each area. *Spivey v. Astrue*, No. 2:11–CV–43–FL, 2012 WL 3704854, at *4 (E.D.N.C. Aug. 7, 2012) (citing 20 C.F.R. § 404.1520a(c)(3)). In the present case, the ALJ's decision evaluated Plaintiff's mental impairments in accordance with the required special technique, therefore remand is not appropriate on these grounds.

Plaintiff is correct that the ALJ failed to mention Dr. Fulmer and Dr. Charles's medical opinions in his decision. However this failure is harmless error, because while the physicians'

---

[4] In support of his finding that Plaintiff did not suffer from severe impairments of anxiety or depression, the ALJ noted, among other things, that Plaintiff's symptoms were stable when he complied with treatment and took his medication. (Tr. at 19). The ALJ also noted that treatment records indicate that Plaintiff stated "his attorney requested that he seek Mental Health Services as he attempted to secure Disability Benefits." (*Id.*)

opinions indicated that Plaintiff suffered from severe mental impairments of anxiety and depression, both ultimately concluded that Plaintiff was not disabled. (Tr. 69, 101). *Young v. Astrue*, No. 1:09CV1008, 2013 WL 474787, at *10 (M.D.N.C. Feb. 7, 2013) ("Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, 'upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation.'"); *see also Powell v. Astrue*, 927 F.Supp.2d 267, 274–75 (W.D.N.C. 2013) (holding that an ALJ's failure to categorize an additional impairment as severe was harmless error). Both Dr. Fulmer and Dr. Charles concluded that "the objective evidence in the file supports the mental capacity for SSRT's in a stable, low-stress work environment." (Tr. 67, 99). Therefore, any alleged misapplication of the law caused Plaintiff no prejudice, because both physicians found Plaintiff's depression and anxiety to be non-disabling.

### E.  The ALJ did not err in weighing the findings of Dr. Entmacher

Finally, Plaintiff argues the ALJ erred by according little weigh to the opinion of Plaintiff's treating psychologist, Dr. Entmacher. (Pl. Mem. at 17). The ALJ found that Dr. Entmacher's "statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent alleged." (Tr. at 28). The ALJ then explained that Dr. Entmacher's opinion that Plaintiff's depression meets Listing 12.04 is inconsistent with his own treatment notes and not supported by objective evidence of record. (Tr. at 27). The ALJ's decision not to accord controlling weight to Dr. Entmacher's opinion was supported by substantial evidence. *Craig*. 76 F.3d 585 at 590 (according no controlling weight to a treating physician's opinion that was inconsistent with his treatment notes and other substantial

evidence).

Substantial evidence supports the ALJ's determination that Dr. Entmacher's treatment notes are inconsistent with his finding that Plaintiff's depression meets Listing 12.04. For example, Dr. Entmacher's Psychiatric Review Technique Form (PRTF), completed on April 3, 2011, reports that Plaintiff's depression meets the "C" Criteria of Listing 12.04. (Tr. at 673). In this section, Dr. Entmacher checks boxes stating Plaintiff has a "[m]edically documented history of a chronic . . . affective (12.04) disorder of at least 2 years' duration" and "a residual disease process that has resulted in such marginal adjustment than even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (*Id.*). However, Dr. Entmacher's treatment notes dated August 13, 2009, less than two years prior to the completion of the PRTF, report that Plaintiff's moods were stable and he was experiencing no suicidal ideation. (Tr. at 661).

Likewise, substantial evidence of record is inconsistent with Dr. Entmacher's finding that Plaintiff's depression meets Listing 12.04. For instance, when Plaintiff was seen in Mission Hospital's emergency department on November 11, 2009, less than two years prior to the completion of the PRTF, Dr. Mims reported that Plaintiff stated he was not experiencing any depression, anxiety, or suicidal ideation. (Tr. at 495). These documented inconsistencies within the two year period in which Dr. Entmacher claims Plaintiff's depression met Listing 12.04 demonstrate that the ALJ's finding is supported by substantial evidence.

## 2. The ALJ Did Not Err at Step Three in Determining that Brown's Impairments do not meet Disability Listing 4.04C

Plaintiff argues that the ALJ's listing analysis is incomplete because he made a general determination that Plaintiff's injuries did not satisfy Listing 4.04C without specifically

comparing his impairments to the listing's criteria. (Pl. Resp. at 2). In order to meet Listing

4.04C, Plaintiff needed to establish:

> 4.04 Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3–4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following: . . .

> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

> 1. Angiographic evidence showing:

> a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

> b. 70 percent or more narrowing of another nonbypassed coronary artery; or

> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

> d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or

> e. 70 percent or more narrowing of a bypass graft vessel; and

> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. 404, Subpt. P, App. 1, § 4.04C.

Plaintiff argues he meets at least one of the required showings of angiographic evidence

listed in 4.04C(1)(a)–(e) because there is "evidence of total 100% occlusion of 5 of his bypass

graft vessels in addition to 50–70% narrowing of his LAD as well as 50% narrowing at another

point in that same vessel. Plaintiff argues his severe impairment meets Listing 4.04C(2) due to

(1) testimony of Dr. Bailey and Dr. Jenkins that "[Plaintiff] has very serious limitations in his

ability to perform activities of daily living" and (2) Plaintiff's testimony that he could not

perform household chores, cook for himself, or mow his lawn with a riding mower. (Pl. Mem. at 18–19).

It is the claimant's burden to demonstrate that his condition meets or equals a listing section and that his condition manifests all of the specific findings described in the set of medical criteria for the listed impairment in question. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "The Fourth Circuit has held that the ALJ must explain his rationale when determining whether a plaintiff's specific injury meets or equals a listed impairment," when it is otherwise impossible to determine whether substantial evidence supports the finding. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986). However, "it is not always necessary for the ALJ to present evidence under a particular step, as long as it is possible, from reading the ALJ's decision in its entirety, to determine whether there was substantial evidence to support the ALJ's conclusions." *Patterson v. Colvin*, No. 4:12-1021, 2013 WL 4441986, at *5 (D.S.C. Aug. 15, 2013) (citing *McCarty v. Apfel*, 28 F. App'x 277, 279–80 (4th Cir.2002) (unpublished) (finding "the ALJ need only review medical evidence once in his decision," therefore, the ALJ's thorough analysis of the medical evidence at step four was sufficient to determine whether claimant satisfied step three)).

Plaintiff cites *Radford v. Colvin*, stating that "the Fourth Circuit held that an ALJ cannot summarily state that an individual's impairments do not meet a listing without considering how the facts of the case line up against the criteria of the relevant listing as it 'makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" (Pl. Resp. at 1). However, Plaintiff's analysis improperly contextualizes the Fourth Circuit's reasoning in *Radford*. *Radford* involved a review of the district court's decision to award benefits. Thus, the Fourth Circuit's analysis of the ALJ's listing decision relates to the court's

inquiry into whether the court's inability to conduct a "meaningful review" required remand. Furthermore, the ALJ's listing analysis in the present case is distinguishable from that of *Radford*. In *Radford*, the district court found that "the ALJ provided *no* reasoning for finding that [the claimant] did not meet Listing 1.04," concluding that his finding was not supported by substantial evidence. *Radford v. Astrue*, No. 5:11–CV–347–BO, 2012 WL 3594642, at *3 (E.D.N.C. Aug. 20, 2012) (emphasis added).

Here, notwithstanding the ALJ's failure at step three to explicitly state the reasons that Plaintiff's impairment did not equal Listing 4.04C, substantial evidence supports such a finding. Read as a whole, the ALJ's decision establishes that the appropriate factors were considered in determining that Plaintiff's impairment did not equal Listing 4.04C. *See Tolliver v. Astrue*, No. 3:09CV372, 2010 WL 3463989, at *4 (E.D.Va. Sept. 3, 2010) (holding that when the decision as a whole establishes that the ALJ considered the appropriate factors in determining Plaintiff did not meet the requirements of any listing, any failure to explicitly discuss a listing is, at most, harmless error for which remand is inappropriate) (citations omitted). Throughout his decision, the ALJ thoroughly discussed the evidence relating to Plaintiff's angiographic condition and ability to independently initiate, sustain, or complete activities of daily living, the two requirements of Listing 4.04.

In particular, the ALJ noted that within a few months after Plaintiff's 2006 bypass surgery, five of the six bypassed arteries had occluded completely (Tr. at 25). Plaintiff argues this medical evidence satisfies the first element of Listing 4.04C; however, the finding predates both the period of alleged disability and significant additional treatment. The ALJ discussed Dr. Bailey's treatment notes that Plaintiff's EECP treatments in 2011 reduced Plaintiff's angina and improved his ischemic cardiomyopathy classification from a Class IV to a Class II–III (Tr. at

25). The ALJ also considered Dr. Jenkins' finding that counterpulsation therapy treatments improved Plaintiff's symptomology. (Tr. at 26). Further, the ALJ referenced the state agency opinion's finding that Plaintiff's heart condition did not meet listing 4.04C. (Tr. at 20). This detailed review of Plaintiff's medical history constitutes substantial evidence supporting Plaintiff's failure to satisfy the first element of Listing 4.04C. *See Picott ex rel. D.P. v. Colvin*, No. 1:10CV710, 2014 WL 222095, at *5 (M.D.N.C. Jan. 21, 2014) (reasoning that although ALJ's decision did not cite specific evidence at step three, subsequent discussion supported his determination that the plaintiff did not meet a listing).

Likewise, the ALJ's decision contains substantial evidence to support a finding that Plaintiff's condition did not satisfy the second element of Listing 4.04C, which addresses the claimant's ability to perform activities of daily living. The ALJ determined that Plaintiff has only mild limitations in this functional area. (Tr. at 19). He discussed how Plaintiff "is able to care for his own personal needs without assistance," noting that Plaintiff "goes to Walmart on a regular basis," "fixes sandwiches or microwaves food," and "walks to the post office." (*Id.*). The ALJ also considered Plaintiff's subjective complaints concerning the limiting effects of his symptoms and determined they were not credible to the extent alleged. (Tr. at 28). The ALJ's decision discusses substantial evidence in support of his determination that Plaintiff was not significantly limited with respect to his ability to initiate, sustain, or complete tasks as required by the listing. The ALJ's subsequent discussion of the record in connection with the listing analysis establishes for purposes of judicial review that substantial evidence supports the ALJ's finding at step three. *See Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (concluding that, despite ALJ's "cursory" explanation at step three, ALJ's analysis at other steps constituted substantial evidence in support of the step three determination). Therefore, the ALJ did not err in determining

Plaintiff's condition did not meet the requirements of Listing 4.04C.

**3.    The ALJ's credibility finding is supported by substantial evidence**

Plaintiff next contends that the ALJ's credibility analysis violates 20 C.F.R. § 404.1529, because the ALJ fails to articulate specific reasons for not finding Plaintiff's testimony credible. (Pl. Mem. at 19). Plaintiff argues that the ALJ found Plaintiff's testimony credible from April 2006 to May 2009, but failed to explain why he did not find Plaintiff's testimony credible after that period. (Pl. Mem. at 19–20).

It is the duty of the ALJ to make credibility decisions. *Craig*, 76 F.3d at 589. In *Craig*, the Fourth Circuit outlined a two-step process for evaluating credibility. *See id.* at 594–95; *see also* 20 C.F.R § 404.1529; SSR 96-7p, available at 1996 WL 374186, at *2. The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by claimant." *Craig*, 76 F.3d at 594. With respect to this step, the ALJ stated that Plaintiff's "medically determinable impairment could reasonably have been expected to produce the alleged symptoms," thus satisfying step one of the credibility determination. (Tr. at 10).

The second step requires the ALJ to evaluate the alleged symptoms' intensity and persistence along with the extent to which those symptoms limit the plaintiff's ability to engage in work. *Craig*, 76 F.3d at 594; 20 C.F.R. 404.1529(c); SSR 96-7p. This requires an ALJ to consider: (1) a plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) a plaintiff's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. *Id.* at 595; 20 C.F.R. §416.929(c); SSR 96-7p. Such "other" relevant evidence includes: (1) a

plaintiff's activities of daily living; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to alleviate pain or symptoms; (5) treatment (other than medication received); and (6) any other measures used to relieve alleged pain and other symptoms. *Craig*, 76 F.3d at 595. The ALJ is not required to discuss each enumerated factor; rather the decision must contain "specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

With respect to the second step, the ALJ found that "the statements concerning the intensity, persistence, and limiting effects of the claimant's symptoms are not credible to the extent alleged. Moreover, they are inconsistent with the established [RFC]." (Tr. at 28). While Plaintiff contends that this finding is not supported by substantial evidence, the record does in fact include substantial evidence in support of the ALJ's credibility determination. Plaintiff argues that the ALJ's only statement that could be interpreted as an attack on Plaintiff's credibility is the ALJ's finding that Plaintiff made significant improvement after his June 2008 TMR procedure. (Pl. Mem. at 20). Yet, the ALJ's decision cites numerous facts addressing his reasons for discounting Plaintiff's credibility. These facts support the ALJ's findings that Plaintiff's daily activities, self-imposed limitations on physical activity, X-rays and MRIs, and subjective statements claiming improvement are inconsistent with Plaintiff's claims that his impairments and pain are disabling.

Specifically, the ALJ noted: (1) Plaintiff stated he only stopped working because he received a closed period of disability from April 6, 2006 through May 29, 2009 (Tr. at 21, 191);

(2) Plaintiff tried working in early 2011, indicating he felt ready to re-enter the workplace (Tr. at 21); (3) Plaintiff's girlfriend, Ms. Tammy Hancock, stated that Plaintiff lives independently, takes public transportation, talks to friends, and routinely shops at Walmart (Tr. at 21, 220–27); (4) Ms. Hancock wrote that Plaintiff lost his last job due to a dispute with his boss, not his medical problems (Tr. at 21, 226); (5) Plaintiff stated he uses a computer, makes meals for himself, can follow instructions, and has no problems with authority figures (Tr. at 21–22, 199–204); (6) Plaintiff attended 12 out of 36 Heart Path sessions, and never returned to continue (Tr. at 22, 309–10); (7) Dr. Ely reported that Plaintiff self-limited his physical activity, despite medical advice to exercise, further suggesting Plaintiff's symptoms were not as limiting as he claimed (Tr. at 22, 312); (8) Plaintiff complained of worsening back pain, but X-rays detected no changes from 2006 (Tr. at 22, 324); (9) in November, 2009, Plaintiff told hospital staff that he preferred not to use heart pain medication so that he could use Viagra instead (Tr. at 23, 345); (10) Plaintiff complained of disabling back pain, yet an MRI showed only mild abnormalities (Tr. at 24, 446); (11) despite Plaintiff's allegations of disabling back pain, in August and September of 2010 he told rehabilitation staff  he had little or no pain (Tr. at 25, 555); (12) despite claiming disabling limitations, Plaintiff felt able to go out to a restaurant for a birthday party (Tr. at 25, 559); (13) after EECP treatment in 2011, Plaintiff reported significant improvement in symptomology, including reduced angina pain and increased energy levels (Tr. at 25–26, 581); and (14) in 2009, against the advice of his doctor, Plaintiff missed appointments and discontinued his medications. (Tr. at 27, 660).

These statements constitute sufficiently specific reasoning in support of the ALJ's credibility finding. The Court finds that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints are not credible to the extent that they are inconsistent with

the RFC assessment.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 9) is **DENIED**, the Defendant's Motion for Summary Judgment, (Doc. No. 11) is **GRANTED**, and the ALJ's decision is **AFFIRMED**. The Clerk's Office is directed to **CLOSE THE CASE**.

**SO ORDERED**.

Signed: September 18, 2014

Graham C. Mullen
United States District Judge